UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lori Ann Stover,  Civ. No. 16-4122 (RHK/SER)

        Plaintiff,

v.  **MEMORANDUM AND ORDER**

Delta Air Lines, Inc. Optional
Insurances Plan,
Administrative Committee of Delta
Air Lines, Inc., and
Prudential Insurance Co. of America,

        Defendants.

---

This matter is before the Court on Defendants' Motion to Dismiss. (Docket No. 17.) For the following reasons, the Motion is granted in part and denied in part.

**BACKGROUND**

Plaintiff Lori Ann Stover previously worked for Delta Air Lines, Inc. ("Delta") as a flight attendant, and participated in the Delta Air Lines Inc. Optional Insurances Plan (the "Plan"), a Delta-sponsored employee-benefit plan governed by ERISA. She participated in two Plan programs in particular: Group Accident Insurance and Private Pilots Accident Insurance. The parties have not defined these programs, but it appears they provided Stover with up to $350,000 and $165,000, respectively, in benefits for job-related injuries. Defendant Prudential Insurance Co. of America ("Prudential") insured the Plan, while Defendant Administrative Committee of Delta Air Lines, Inc. was the fiduciary for, and administered, the Plan.

The Plan included several provisions regarding claim processing.  First, it required that "proof of the loss for which [a] claim is made" must be submitted within "90 days after the date of the loss."  (Kamps Aff. (Docket No. 20) Ex. C at 39.)  Second, a Plan participant could appeal the denial of a claim within 180 days from receipt of the denial.  Determination of the appeal must then occur within 45 days, but this 45-day period could be extended by an additional 45 days under special circumstances, which would require prior notice.  (Id. at 45-46.)  Finally, no legal action under the Plan may "be brought more than three years after the end of the time within which proof of loss is required."  (Kamps Aff. Ex. D. at 30.)

On August 24, 2012, Stover was injured when a flight on which she was working suddenly encountered turbulence.  She was thrown to the floor and landed on her right side, injuring her right arm, her shoulder, and her hand.  Subsequently, she was diagnosed with Reflex Sympathetic Dystrophy, causing her "severe, intractable pain."  She underwent several surgeries in an attempt to remedy the problems, but she continues to suffer from extreme pain, difficulty turning her head, and limited motility and function in her right arm and hand.  She alleges she has been unable to work in any capacity since the date of the incident.  Following her injury, Stover contacted Prudential to submit claims under the Plan.  She alleges Defendants gave her the runaround despite repeated telephone calls, emails, and letters.  Eventually, however, Prudential gave Stover a claim-submittal form, and she promptly submitted her claim, asserting permanent disability.

On or about September 3, 2013, Prudential denied Stover's claim by letter, concluding that she was not permanently disabled.  The letter stated that she could appeal

this determination, that a determination on the appeal would be made within 45 days, and that the 45-day period could be extended only if Prudential provided prior notification. Lastly, the letter advised that once the appeal was decided, Stover could elect either to seek a further appeal or to commence an action under ERISA. The letter made no mention of the Plan's three-year time limit for commencing a lawsuit.

On September 10, 2013, Stover informed Prudential that she received the letter denying her claim and that she was "attempt[ing to] appeal," and she inquired what further steps she needed to take. She heard nothing further from Prudential. Prudential contends it did not receive her appeal.

No further action occurred until Stover commenced this lawsuit on December 9, 2016, more than three years later. Her two-Count Amended Complaint alleges (1) that Defendants violated ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), by failing to process her claims properly and (2) in the alternative, that Defendants breached fiduciary duties owed to her under ERISA by not properly processing the claims. Notably, she seeks an order from this Court remanding the matter to Defendants with instructions to permit her to resubmit her claims; she does not seek an award of benefits. Defendants now move to dismiss.

**DISCUSSION**

**A.     Count I**

Defendants argue that Count I of Stover's Amended Complaint, which alleges that Defendants violated ERISA by failing to properly process her claims for benefits, is untimely. The Court disagrees.

3

ERISA contains no statute of limitations for claims under § 502(a)(1)(B). Heimeshoff v. Hartford Life & Acc. Ins. Co., 134 S. Ct. 604, 610 (2013). As a result, ERISA-governed plans may impose their own limitation periods for commencing lawsuits, as long as those periods are reasonable. Id. at 612. Here, Stover does not contend that the Plan's three-year limitation period for commencing a lawsuit is unreasonable. This period runs from the "end of the time within which proof of loss is required." Proof of loss, in turn, "must be furnished within 90 days after the date of the loss."

Defendants assert that Stover's loss occurred on August 24, 2012, the date of her injury, because she marked this date as the date of loss on the claim form. (Stover Decl. (Docket No. 27) Ex. 5 at 1.) Thus, they argue that proof of loss was due 90 days later, November 22, 2012, and Count I had to be filed no later than three years after that date, or November 22, 2015. Because Stover did not sue until nearly the end of 2016, Defendants argue that Count I is time-barred and must be dismissed.

But to determine Stover's date of loss, the Court must look to the Plan's terms and construe them according to their "literal and natural meaning." Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Shank, 500 F.3d 834, 838 (8th Cir. 2007) (citation omitted). Defendants make no effort to undertake such an analysis here or identify the Plan's definition of the term "loss," which is not synonymous with injury or accident. Indeed, the Plan defines an "injury" as "injury to the body of a Covered" employee and "loss" as any of a prescribed set of 14 different types of injuries, including death or loss of sight. (Kamps Aff. Ex. D at 16, 29.) In other words, it is possible to

4

suffer an injury that does not constitute a loss—such as a cracked rib, which is an injury not listed in any of the 14 categories in the Plan's definition of loss.

The purported loss at issue in this case is "total and permanent disability," which is one of the 14 categories listed under the Plan's definition of loss. According to Stover, a loss from total disability[1] can occur well after the injury causing it, because total disability requires that an employee be unable to work "beyond one year after the [employee] sustains [an] Injury." (Id. at 24.) The Plan suggests that loss from total disability cannot occur until at least 365 days after an injury because an employee might not know if she fits within this definition until at least one year has passed from the date of her injury. Yet, other parts of the Plan suggest that a loss from total disability must occur within 365 days following an injury. Immediately after defining the term "loss," the Plan provides that benefits for a total disability become payable only if the loss "begins within 365 days after" a covered accident and persists for 31 days. (Id. at 16-17.) The Plan is thus internally inconsistent, requiring on one hand that a loss from total disability begin within 365 days after an injury, while at the same time indicating that a loss from total disability cannot occur until at least 365 days have passed.

The Plan's terms leave it unclear whether Stover timely commenced Count I, because they are ambiguous as to precisely when she suffered a loss. In such a situation, the Court must construe the Plan's ambiguities against Defendants. Belk v. Durham Life

---

[1] The Plan defines "total and permanent disability" as a total disability that "will be met for the rest of the employee's lifetime." (Kamps Aff. Ex. D at 24.)

5

Ins. Co., 959 F.2d 104, 105-06 (8th Cir. 1992). Thus, at this stage, the Court cannot say Count I is untimely as a matter of law and subject to dismissal.

Defendants argue that even if Count I is timely, it should be partially dismissed because Stover only exhausted a claim under the Group Accident program and not the Private Pilot Accident program. A participant must exhaust administrative remedies in an ERISA-governed plan before commencing suit. Chorosevic v. MetLife Choices, 600 F.3d 934, 942 (8th Cir. 2010). But an ERISA plan can be estopped from asserting exhaustion. Id. at 943. Stover seeks to invoke the doctrine of equitable estoppel here.

When Stover first wrote to Prudential to inquire about submitting a claim, she made clear that she sought benefits under both the Group Accident program and the Private Pilot Accident program. (Stover Decl. Ex. 1 at 1.) Prudential's response did not distinguish between the two programs, sending her a letter containing a policy number applicable to both programs and only one claim form. Stover submitted that form and Prudential responded by letter that it had received her claim for "accidental dismemberment" benefits, without indicating which program was at issue, and it once again used a policy number applicable to both programs. (Stover Decl. Ex. 6.) Finally, Prudential's denial of her claim did not distinguish between the programs and used the same single policy number. (Stover Decl. Ex. 8.)

Given this record, the Court cannot say that it was unreasonable for Stover to believe she had submitted a claim under both programs. See Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 493-94 (8th Cir. 2002) (stating that equitable estoppel precludes a defense, such as exhaustion, when "a party . . . makes a representation that misleads

another person, who then reasonably relies on that representation to his detriment") (quoting Farley v. Benefit Trust Life Ins. Co., 979 F.2d 653, 659 (8th Cir. 1992)). The issue of exhaustion requires further record development.

**B.    Count II**

Unlike Count I, Count II of Stover's Amended Complaint is governed by an express statutory limitation period: no action for breach of fiduciary duty under ERISA may be commenced later than (1) six years after the date of the last action constituting a part of the breach or (2) three years after the date on which the plaintiff had actual knowledge of the breach, whichever is earlier. 29 U.S.C. § 1113. This statute of limitations bars Count II.

The crux of Count II is that Defendants failed to process Stover's appeal. She alleges that she heard nothing after she submitted an appeal letter to Prudential on September 10, 2013. But as noted above, the Plan specifies that a decision on an appeal shall be made within 45 days of its receipt, although that period "may be extended by up to an additional 45 days . . . if special circumstances require an extension," as long as written notice is provided during the initial 45-day period. If Stover had submitted an appeal on September 10, 2013, she should have expected a decision—or a request for an extension—by late October 2013. She received nothing. Hence, by that time, she either knew or should have known that no action was being taken.

As previously noted, a claim for breach of fiduciary duty under ERISA may not be brought later than three years after the date on which the plaintiff had actual knowledge of the breach. 29 U.S.C. § 1113. Actual knowledge means knowledge "of all material

facts necessary to understand that some claim exists." Brown v. Am. Life Holdings, Inc., 190 F.3d 856, 859 (8th Cir. 1999) (quoting Gluck v. Unisys Corp., 960 F.2d 1168, 1177 (3d Cir. 1992)).  Here, Stover was on notice that a decision on her appeal (or a request for an extension) should have occurred by late October 2013, but she received nothing from Prudential.  Accordingly, she was aware of the potential breach by that time but did not file her lawsuit until more than three years later.

Stover argues that the three-year period did not begin to run until December 9, 2013, because Prudential was permitted up to 90 days to process her appeal, and she commenced this action on the last day possible to save Count II (December 9, 2016). The Plan's terms undermine this argument.  Prudential was only permitted 90 days to process an appeal if it notified Stover in writing, during the initial 45-day period, that it required additional time.  Stover herself alleged that no such notice was provided here. (Am. Compl. (Docket No. 5) ¶¶ 45-46.)  Accordingly, she knew or should have known long before December 9, 2013, that Prudential was not acting on her appeal.  Therefore, Count II is untimely and must be dismissed.

**CONCLUSION**

Count II of the Amended Complaint is barred by the statute of limitations and must be dismissed, but Defendants failed to establish that Count I is untimely. Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendants' Motion to Dismiss (Docket No. 17) is **GRANTED in part and DENIED in part**; and

2. Count II of Stover's Amended Complaint (Docket No. 5) is **DISMISSED with prejudice**.

Dated: <u>September 25, 2017</u>

<u>*s/ Paul A. Magnuson*    </u>
Paul A. Magnuson
United States District Court Judge